# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LATERESA GAIL PITTS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-15-179-FHS-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Lateresa Gail Pitts requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 1, 1970, and was forty-three years old at the time of the administrative hearing (Tr. 28). She earned a GED, and has worked as a poultry farm worker and hand packager (Tr. 18, 161). The claimant alleges inability to work since September 25, 2009, due to social anxiety, manic depression, fibromyalgia, bipolar disorder, post-traumatic stress disorder, and panic attacks (Tr. 160).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on December 15, 2010. Her application was denied. Following an administrative hearing, ALJ Doug Gabbard, II, found that the claimant was not disabled in a written opinion dated March 11, 2014 (Tr. 11-19). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she needed a 10-minute break every couple of hours throughout the workday (Tr. 15). The ALJ concluded that even though the claimant could not return to her past relevant work, she was nevertheless not disabled because

there was work she could perform, *i. e.*, housekeeping cleaner and small product assembler (Tr. 19).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the medical evidence, and (ii) by improperly rejecting evidence reflecting her impairments. The undersigned Magistrate Judge agrees with the claimant's contentions, and the decision of the Commissioner should be reversed.

The ALJ determined that – from the alleged onset date of September 25, 2009 through her date last insured of June 30, 2010 – the claimant had the sole severe impairment of fibromyalgia, as well as the nonsevere but medically-determinable impairments of anxiety and affective disorders, hypertension, headaches, osteoarthritis, muscle disorders of the ligament and fascia, and sleeping problems, as well as pain in the neck, shoulders, and fingers (Tr. 13-14). The medical evidence relevant to this appeal reflects that from 2008 through 2011, the claimant largely received treatment at Family Health Center of Southern Oklahoma from Tommie Stanberry, a physician's assistant. Notes from this time reflect repeated reports of and treatment for anxiety, high irritability, and sleep disturbance (Tr., *e. g.*, 244-245, 236-357).

On March 11, 2011, consultative examiner William Cooper, D.O., conducted a physical examination of the claimant. Upon examination, she reported she had been diagnosed six years previously with social anxiety and bipolar disorder by her primary treatment provider, as well as a history of two suicide attempts when she was a teenager (Tr. 359). He noted she had 18 of 18 trigger points consistent with fibromyalgia, and

further assessed her with social anxiety disorder, bipolar disorder, fibromyalgia, hypertension, and psychosis (Tr. 361, 366).

That same month, Shalon Palacio-Hollmon, Ph.D., conducted a mental status examination of the claimant (Tr. 368). Even while providing her history, Dr. Palacio-Hollmon noted that the claimant showed overt signs of depression (Tr. 368). Following the diagnostic examination, Dr. Palacio-Hollmon assessed the claimant with the Axis I disorders of bipolar disorder II, PTSD, and panic disorder with agoraphobia, as well as the Axis II disorder of borderline personality disorder (Tr. 370). He then issued a grave prognosis:

> [Claimant] meets diagnosis criteria for multiple Axis I and Axis II disorders. . . . She suffers from a substantial mood disorder that grossly impairs her ability to meet demands of life. She is severely depressed with interpersonal and social withdrawal. Due to her mental illness she is gravely disabled such that she is unable to care for herself so that her health and or safety are endangered. She has repeated episodes of decompensation. She has an overall poor adjustment to stress. It is recommended with a place of her choosing she seek psychiatric therapy with focus of possible treatment on depression symptoms and increasing reality contacts. The duration and prognosis of impairment is long term secondary to personality disorder[.] It is recommended she have additional testing or evaluation by a psychiatrist for medication changes or additions. *Her ability to deal with the public, supervisors, and co-workers is limited by irritability, no trust, transient paranoia and tearfulness. She does not have the ability to understand, remember, or carry out simple or complex instructions.* She requires structure, supervision, and support.

(Tr. 370) (emphasis added).

In April 2011, the claimant applied for services with Mental Health Services of Southern Oklahoma, but was discharged against medical advice in October 2011, after an apparent disagreement with the treatment providers as to her medication management

(Tr. 396). At intake, she had been assessed with bipolar disorder, unspecified, and agoraphobia with panic disorder, as well as a global assessment of functioning score of 40 (Tr. 397, 403). She was given a good prognosis for treatment, and a fair prognosis for recovery, and notes reflect that the claimant was treated by Tommie Stanberry at the Tishomingo Family Health Clinic beginning August 2008, but she had to discontinue her services there when the bill was over $50 (Tr. 405).

On May 18, 2011, Janice B. Smith, Ph.D., reviewed the medical record and determined that there was insufficient evidence of a mental impairment during the insured period (Tr. 373). She noted that the claimant had been regularly prescribed psychiatric medications for anxiety and depression, and that the medical evidence of record indicated irritability and some sleep disturbance, but then stated,

> While it appears the [claimant] may have had some significant complaints to [treatment providers] regarding anxiety and depression it is difficult to assess level of severity as [claimant] has no [history] of [inpatient/outpatient] psych treatment by a [qualified mental health professional] and [medical evidence of record] does not allude to decompensation to the point that [treatment provider] deferred [treatment] to mental health professional. Claim lacks sufficient medical evidence to determine [claimant's] functional capacity at or prior to her [date last insured].

(Tr. 385).

A September 11, 2013 note to the claimant's representative from Patsy Sisson, a license professional counselor at Riverbend Counseling Services, indicated that the claimant had not been seen on a regular treatment basis due to reported transportation issues, that her diagnoses included bipolar disorder with psychotic features, and that she was also paranoid, but that she was primarily in therapy with her son as the primary

-6-

client. As a footnote, Ms. Sisson indicated she did not believe the claimant was capable of maintaining employment (Tr. 232, 471).

In his written opinion at step two, the ALJ noted Dr. Palacio-Hollmon's assessment as part of the record, but gave it little weight because "the overall medical evidence of record does not suggest the claimant's mental impairments are severe" and he only examined the claimant once (Tr. 14). At step four, the ALJ determined the claimant's RFC, summarized her hearing testimony, then summarized the medical records only in relation to her severe impairment of fibromyalgia. He then rejected the state reviewing physician opinion that the claimant could perform sedentary work, instead determining she could perform light work as stated by two other state reviewing physicians. He then declined to give Ms. Sisson's opinions as to the claimant great weight, because she was not an "acceptable medical source" (Tr. 18). Accordingly, he determined that the claimant was not disabled.

It is true that because the ALJ found that the claimant suffered from the severe impairment of fibromyalgia, any failure to find the claimant's anxiety and affective disorders; hypertension; headaches; osteoarthritis; disorders of muscle, ligament, and fascia; pain in neck, shoulders, and fingers; and sleeping problems severe at step two is ordinarily harmless error. Nevertheless, the ALJ *is required* to consider the effects of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient

severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error *was not* harmless, because the ALJ wholly failed to account for the claimant's nonsevere impairments in assessing her RFC. Additionally, the ALJ failed to properly assess the combined effect of all the claimant's impairments – fibromyalgia in combination with her numerous nonsevere impairments – in assessing her RFC. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in

either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

In particular, "[a]n ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ entirely neglected to go through this process at step four with regard to any of the opinions related to the claimant's mental impairments, and thus the undersigned Magistrate Judge cannot find that he properly evaluated the claimant's mental impairments, particularly as to the evidence related to irritability and interaction with

others, as well as the effect of her paranoia and her ability to follow even simple instructions. *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin*, 365 F.3d at 1219 (10th Cir. 2004). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'"). This was a significant omission here because each of these limitations directly impact a claimant's ability to perform work. In any event, it was clearly error for the ALJ to implicitly reject Dr. Palacio-Hollmon's opinion at step two and further reject Ms. Sisson's opinion at step four without first going through the proper analysis. *See Hamlin*, 365 F.3d at 1215 ("An ALJ must evaluate every medical opinion in the record[.]"). *See also Martinez v. Astrue*, 422 Fed. Appx. 719, 725 (10th Cir. 2011) ("To be sure, the ALJ may have had his reasons for giving portions of Dr. LaGrand's opinion 'great weight,' but then disregarding other, probative portions of her opinion. However, before doing so, the ALJ was required to discuss why he ignored this evidence.") [internal citations omitted]

Indeed, the ALJ devoted much of his discussion at step four to questioning his determinations at step two, *i. e.*, the severity of these impairments, even challenging the claimant's acknowledged severe impairment of fibromyalgia. Instead, the ALJ should have explained why even the claimant's severe physical impairments did not call for

corresponding limitations in the RFC, as well as why the combined effect of her multiple impairments did not call for corresponding limitations. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Because the ALJ failed to properly analyze evidence of record as to the claimant's mental limitations, and further failed in assessing her physical limitations, the Commissioner's decision should be reversed and the case remanded for further analysis by the ALJ. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work she can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**